## WORTH v. PECK.

Under the act of 1844, the county commissioners cannot defend an action for the penalty for not issuing a warrant to collect the fines returned to them by the brigade inspector, by showing defective or void enrolments by the captains, whose returns were certified by the inspector.

The return of the inspector is evidence.

The action for the penalty is properly in his name.

Where a statute affixes a penalty of not less than one, nor more than three hundred dollars, the *minimum* is *one hundred* dollars.

In error from the Common Pleas of Chester.

*Dec.* 31—*Jan.* 3, 4. This was an action of debt by Peck, a brigade inspector, against Worth, one of the commissioners for the county in which were the townships composing the brigade, to recover the penalty imposed by the act of 1844, for neglecting or refusing to deliver to the collectors copies of the returns of fines assessed on delinquent militia men.

The plaintiff offered in evidence his list of delinquents and fines assessed, which was certified by himself "to be a true copy of returns made to me, according to law." It was proved this paper was handed to the commissioners within the time required by the act of Assembly, and was produced from their office. The defendant objected, but the court overruled the objection. No warrant had been issued by the commissioners pursuant to the statute, and the commissioners had declared they intended not to issue one.

The defendant offered to show that in one of the townships composing the brigade, there had been no enrolment prior to the first Monday in May in the year in question. That on that day persons assembled, but there was no officer; that they then agreed upon a person to muster them, who made out a list of those present, and subsequently procured an appointment from the colonel as captain; that his return was in part of absentees on the first Monday, and was made to the colonel and not to the inspector, but not sworn to, as he never was commissioned. That, in another township, the person enrolling was never commissioned, and the returns were not sworn to. That, in another, the person enrolling had no commission, or appointment in writing. This evidence was rejected. The defendant was a member of the Society of Friends. The points were—1. That the action should be in the name of the Commonwealth. 2. That the jury might find a verdict as low as one dollar. 3. The act was unconstitutional.

BELL, P. J., told the jury the only question for them was the

amount of the penalty, and as to that the *minimum* under the act of Assembly was one hundred dollars.

The evidence admitted and rejected, and the points above stated, were assigned for error.

*Darlington,* for plaintiff in error.—The certificate of the plaintiff was but secondary evidence, and he should have produced the returns which were in his office. The evidence we offered was certainly relevant. It showed that the proceedings here, which were of a court of inferior and limited jurisdiction, were irregular. This distinction has always prevailed: Willes, 31, 128; 19 Johns. 39; 7 Johns. 98; 2 Day, 423; 13 Johns. 154. The commissioners and their officer would have been trespassers in levying the fines, if any such irregularity were shown: Sew. on Sheriffs, 101; Morgans v. Bridges, 1 Barn. & Ald. 647; Parsons v. Lloyd, 2 Wm. Bl. 845. The act of Assembly says, " the penalty shall not be less than one nor more than three hundred dollars"—the *minimum* is, therefore, one dollar.

*Hemphill,* contrà.—The act was to remedy the existing evil, which was a refusal of the captains to act when elected, or of the people to elect. The inspector acts ministerially only, and not judicially; his returns are declared to be binding on the commissioners, who must act upon them. They are not liable for any previous mistakes: 1 Cain. T. R. 92. The remedy is against those who committed the blunder: Fitler v. Patton, 8 Watts & Serg. 458.

*Lewis,* in reply.—Those only who are regularly enrolled are liable to fine, and we offered to show there were no objects for the commissioners to act upon, that is, no militia men, 8 Rep. 114; 10 Rep. 76; Cro. Ch. 336; 1 Rawle, 143, 322; 14 Serg. & Rawle, 164. [ROGERS, J.—There is a distinction in our cases; the party is not a trespasser, but if he act maliciously an action on the case lies.]

*Jan.* 19.—ROGERS, J., (after stating the act of Assembly and the facts of the case.)—The question is nothing more nor less than this, whether a law of the legislature shall be enforced in the county of Chester.

To the admission of the paper purporting to be a true copy of the militia fines of the delinquent enrolled militia men, the original remaining on file in the office of the brigade inspector, the defendant objected, and this is the first bill. But this is the document referred to expressly in the sixth section, on which the board

z 2

are required to act; and why it should be necessary in an action against them for refusal to perform their duty, to produce the original, I am unable to discover.    We cannot suppose that it is not a true copy, for the presumption is, that the plaintiff, who is a public officer, has done his duty.    It is evidence, in the first instance, and if the original would be serviceable in the defence, which we cannot suppose, the production of the paper may be compelled, on notice to the brigade inspector.    The objection, founded on the idea that it is not the best evidence, is the erroneous notion, as will be hereafter shown, that the commissioners are constituted judges of the legality of the appointment.

But this exception was not much pressed.    The stress of the argument is on the second bill.

The defendant offered to prove certain points detailed in the second bill, which was overruled, and of this he complains.

It is somewhat difficult to comprehend the precise object of the testimony offered, or its extent; but, as I understand the offer, it is intended to prove that, in certain designated companies belonging to the brigade, there were great irregularities; that no company officers were chosen, and no proper enrolment made, and in some no attempt at enrolment whatever.    But, conceding the truth of every point stated in the bill, what defence is that to the action ?    It is no justification for refusing to issue any warrant whatever, even for the collection of the fines of those who were properly enrolled.    If there was one delinquent within the bounds of the brigade, the penalty would be incurred.    But, waiving this objection, which, it is submitted, would in itself conclude the defendant, it remains to inquire into the right claimed by the commissioners to judge whether the previous proceedings have been regularly conducted.    I have looked in vain throughout the act for the semblance of authority vested in them to go behind the return of the brigade inspector.    That is their warrant, in fact, amounting to an order, by competent authority, to perform certain ministerial duties, absolutely essential to the efficiency of the militia system, under a certain penalty prescribed by law.    It was not designed they should have any discretion.    It is an act, as expressed in the title of the bill, to provide a more rigid mode for the collection of the militia fines.    It became necessary on account of the evasion of previous acts; and now the attempt is again made to evade its provisions by a claim destructive of the whole action of the bill, and with the avowed intention of defeating it altogether.    To each officer is assigned his appropriate duty, and he is not made answerable for

the duties of others. This is the whole scope and design of the act. We are at all times disposed to deal tenderly with conscientious scruples; but it may not be improper to remark, that more respect would be entertained for the defendants, if, as they did not deem themselves at liberty to execute the law, they had thought proper to resign a commission, the duties of which they could not in conscience perform. In charity, I am inclined to believe that they ceased to remember they were acting under the obligation of their official oath. It is some palliation of their conduct that they wished to resign, but were advised they were not permitted to do so. It seems a little out of place that persons of such tender consciences do not recognise the obvious duty of every citizen to submit to the laws of his country; but rather seek by every kind of indirection to elude its plain requirements. The excuse now made for the commissioner is, that, as some of the companies in the brigade were irregularly mustered, and, as to some, there was no enrolment; that they were not bound to issue their warrant to the collectors, because it would subject them to suit as trespassers. Even granting the law as assumed, I am by no means prepared to admit it would be any justification of their conduct. It is a risk which a public officer is bound to run. For the performance of his duty, he must, in many cases, rely for his indemnity on the Commonwealth, in whose service he is, who will at all times protect him where he is in no default. But, be this as it may, this is a mere pretext, for they incurred no danger on that account. This is perilous doctrine for the commissioners; for the consequence is, they would be subject to an action at the suit of every person returned as a delinquent without being properly enrolled. It would expose them to an inquiry, impracticable in the nature of things, to ascertain who were and who were not properly enrolled and assessed. That the commissioners would not be liable to action, is ruled in Fox v. Wood, 1 Rawle, 146. In that case, it is decided that all that is necessary is, that the accused should be liable to military duty. That is the foundation of the charge, and gives jurisdiction to the court; and that is all that is required to protect the officer, who executes the warrant, from suit, although the individual against whom the warrant is directed is exempt. That the officer is not bound to know that fact, and consequently he cannot be a trespasser, the Chief Justice refers to a case ruled at Chambersburg, which is well recollected, although unfortunately it has not been reported, having shared the fate of all the cases decided at that term. By the act of 1844,

instead of a regimental court-martial, the company officers are substituted. To them jurisdiction is given, and they are responsible. They are bound to make the enrolment, to make the return to the brigade inspector, who returns a list of delinquents to the commissioners, who are required in that case to issue their warrants to the appropriate collectors. Neither the commissioners nor the brigade inspector are bound to know who are exempt, or who are enrolled, and consequently they cannot be answerable at the suit of the party aggrieved. The remedy is against the person making the false return, and guilty of the wrong. But here the commissioners, for reasons which they have not even attempted to conceal, have peremptorily refused to perform their duty, by which it becomes impossible to determine who are delinquents and who are not, as, by their refusal to act, they have effectually shielded the guilty and the innocent alike from responsibility. It is not alleged that the whole brigade were so improperly enrolled as that none were delinquents; and, if it had been, it would have been no justification, as that is a matter with which they have nothing to do. It is, however, contended that, although the commissioners might have issued their warrant without risk, yet they were not bound to do so. But we are of opinion they have no discretion. Their duty is ministerial; that there is nothing in the act which constitutes them judges. They are bound to obey, without inquiry, the plain directions of the act. Whether the officers appointed to enrol the militia have done their duty, must be left to be determined in a suit between the proper parties. If the commissioners have the right to go behind the return of the brigade inspector, the collectors and the brigade inspector himself have the same right—a construction which would prostrate the intention of the legislature, and amount to a repeal of the act.

We perceive no error in the answers of the court. The action, for the reasons given in the charge, is well brought in the name of the brigade inspector; and the jury were not at liberty, as they were instructed, to give less than $100, that being the minimum penalty imposed by the act on the commissioners for refusing to execute the law.

There is no error in declining to answer the plaintiff's third point, of which the defendant can avail himself, as that was a constitutional question, which the counsel declines to argue, and which must have been answered against him. It is unnecessary to repeat what has been well said in the charge.

Judgment affirmed.